## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAQUAN LEWIS, | |
| Plaintiff, | |
| v. | Civil Action No. 20-2241 (ABJ) |
| DISTRICT OF COLUMBIA, *et al.*, | |
| Defendants. | |

## DEFENDANTS' REPLY IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## INTRODUCTION

Defendants the District of Columbia, Metropolitan Police Department (MPD), Chief Peter Newsham, Commander William Fitzgerald, Sergeant Megan Mulrooney, and Officers Joshua Anderson and Joseph Blasting (collectively, the District) maintain that plaintiff's lawsuit, alleging several Section 1983 and common law claims, should be dismissed on various grounds. In his opposition to the District's motion to dismiss, plaintiff marshals irrelevant case law and presents arguments that mischaracterize the allegations in his own Complaint. But the fact remains that he has not stated a claim for relief. Plaintiff has not stated a due process claim because he does not have a protected interest in his concealed-carry license (CCL) and was not denied adequate process before it was revoked. Plaintiff's claims do not implicate the Second Amendment because they pertain only to a single firearm. And the police encounters he alleges do not amount to Fourth Amendment seizures,

excessive force, assault or battery. Further, plaintiff has not pled sufficient facts to make out an equal protection claim. Regardless, plaintiff still has not identified any actions by the individual defendants that violated clearly established law, nor has he alleged sufficient facts to establish municipal liability. Finally, plaintiff has not stated a claim for common law false arrest or false imprisonment. The Complaint should be dismissed.

## ARGUMENT

### I.   Plaintiff Fails To State a Due Process Claim.

#### A.   *Wrenn* Does Not Establish a Protected Interest in a Concealed Carry License.

Plaintiff contends that under *Wrenn*, "[d]epriving [him] of his concealed carry license—and thereby his constitutional right to carry firearms for personal self-defense beyond the home—therefore implicates the Constitutional liberty interest." Pl.'s Opp'n to Defs.' Mot. to Dismiss [10] (Pl.'s Opp'n) at 9 (citation and internal quotation marks omitted) (citing *Wrenn v. District of Columbia*, 864 F.3d 650, 667 (D.C. Cir. 2017)). But as the District argued in its opening memorandum, no constitutional interest, let alone a liberty interest, is implicated by reasonable restrictions on carrying or owning one specific firearm. *See* Defs.' Mem. in Support of Motion to Dismiss [8] (Defs.' Mem.) at 21 (citing cases). *Wrenn* does not say otherwise. There, the D.C Circuit struck down a law limiting concealed-carry licenses to those able to demonstrate a "good reason to fear injury to [their] person or property" or "any other proper reason for carrying a pistol." *Wrenn*, 864 F.3d at 655. The court explained that the good-reason law amounted to "a total ban on most D.C. residents'

2

right to carry a gun in the face of ordinary self-defense needs." *Id.* at 666. The court did not, however, suggest that revoking or confiscating a specific individual's CCL on specific grounds violates a protected constitutional interest. On the contrary, the court acknowledged that it had upheld other "reasonable regulations" in other cases, *see id.* (citing *Heller v. District of Columbia (Heller II)*, 670 F.3d 1244 (D.C. Cir. 2011), and *Heller v. District of Columbia (Heller III)*, 801 F.3d 264 (D.C. Cir. 2015)), and that the right to bear arms remained "subject to longstanding restrictions," *id.* at 667. Plaintiff has no protected interest in his CCL, and *Wrenn* does not hold otherwise.

B. <u>Plaintiff Has No Protected Interest Because the Chief Has Discretion To Grant or Deny Concealed Carry Licenses.</u>

Plaintiff next argues that the existence of legal license revocation procedures "under which the Chief of the MPD has limited discretion to revoke a license is no defense when Defendants have simply taken the physical license and *ignored* those procedures." Pl.'s Opp'n at 8 (plaintiff's emphasis). That, however, has nothing to do with whether a protected interest exists in the first place. The Chief's legal discretion to grant, deny and revoke CCLs makes clear that CCL holders have no interest triggering due process protection. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); *Roth v. King*, 449 F.3d 1272, 1285 (D.C. Cir. 2006). Even so, the District has argued that based on plaintiff's own allegations, MPD in fact followed the correct process provided by law when it issued plaintiff a Notice of Revocation letter in October of 2018. *See* Defs.' Mem. at 17; *see also* Compl. [1] ¶ 43 (plaintiff received Notice of Revocation pertaining to October 10 incident); D.C. Code § 7-2509.05; 24 DCMR § 2341.1. Even as alleged, any other sporadic failures to follow specified legal

procedures do not amount to an automatic violation of constitutional due process. *See* Defs.' Mem. at 18 (citing *English v. District of Columbia*, 815 F. Supp. 2d 254, 266 (D.D.C. 2011)).

Perhaps acknowledging that MPD's discretion cuts against the existence of a protected interest, plaintiff contends that the relevant legal provisions mandate that the Chief provide licensees with written notice ahead of revoking a license, which plaintiff alleges "happen to be the very provisions [the District has] flouted." *See* Pl.'s Opp'n at 10 (citing D.C. Code § 7-2509.05). But these requirements—which plaintiff was aware the District followed, *see* Compl. ¶ 43—only require that licensees be provided notice under certain circumstances. They in no way abridge the Chief's discretion to grant or deny licenses. Despite what plaintiff argues, three instances of the word "shall" pertaining to these notice requirements has no talismanic effect. *See* Pl.'s Opp'n at 10. Mandatory notice procedures do not create a property interest in a CCL. Only if the applicable statute placed "substantive limitations" on the Chief's discretion to grant or deny licenses would a protected interest exist. *See* Defs.' Mem. at 12 (citing cases). It is clear that no such interest exists here.

### C.   Plaintiff Fails To Allege the Absence of Due Process.

Plaintiff also has not alleged a lack of due process. Plaintiff's largest barriers to establishing inadequate process are his own allegations pertaining to the two violations he identifies:  Once in October 2018 when he turned in his CCL, and once in April 2020 when officers confiscated his CCL and firearm registration certificate during a stop. These instances do not support a due process violation.

First, plaintiff alleges that he received a Notice of Revocation on October 22, 2018, turned in his license himself, subsequently appealed the revocation action, was notified by MPD that his license "would be 'reinstated' during his appeal," and "retrieved his license on November 21, 2018." Compl. ¶¶ 43–46. Plaintiff disputes the District's argument that these allegations establish adequate process, *see* Defs.' Mem. at 17, contending that the District "ignores Due Process jurisprudence." Pl.'s Opp'n at 12 (footnote omitted). But plaintiff bases this proposition on *Atherton v. District of Columbia (Atherton I)*, 567 F.3d 672 (D.C. Cir. 2009), a case primarily about qualified immunity that, even insofar as it addresses due process, does not undermine the District's argument. In *Atherton I*, the plaintiff alleged he was unlawfully removed from a Superior Court grand jury by a prosecutor and court staff, even though Superior Court rules only provided for the removal of grand jurors "by the Chief Judge or another appointed judge for cause shown." 567 F.3d at 678, 691. The D.C. Circuit remanded for the Court to determine whether this amounted to a procedural due process violation, and whether the defendant officials were entitled to qualified immunity. *Id.* The Court subsequently granted the defendants qualified immunity on remand, finding that notwithstanding its written rules, the Superior Court had an established informal practice of delegating grand juror removals to the juror officer. *Atherton v. District of Columbia (Atherton II),* 813 F. Supp. 2d 78, 84 (D.D.C. 2011). Affirming that decision, the D.C. Circuit concluded that "the procedural due process owed a grand juror seems as unclear today as it was over a decade ago when Atherton was dismissed from jury service … ." *Atherton v. District of Columbia (Atherton III)*,

706 F.3d 512, 515 (D.C. Cir. 2013). At most, then, *Atherton I*, *Atherton II* and *Atherton III* stand for the proposition that ambiguous procedural requirements may entitle officials to qualified immunity on procedural due process claims. The cases say nothing about whether someone afforded adequate process, such as plaintiff alleges here, can prevail on those claims.[1]

Plaintiff's allegations as to the April 2020 encounter get him no farther. Plaintiff does not respond to the District's analysis of this encounter under *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Instead, plaintiff attempts to distinguish the facts of one cited case, and argues that the District has impermissibly "re-characterize[d] the facts of this case" by introducing documents plaintiff had in his possession that contradict allegations in the Complaint. *See* Pl.'s Opp'n at 13–15. But both strategies are unavailing. First, plaintiff's efforts to distinguish *Richer I* and *Richer II* on their facts miss the fundamental point: Alleged searches and seizures amid a police encounter are properly raised under the Fourth Amendment, not as due process claims. *See, e.g.*, *Thorp v. District of Columbia*, 142 F. Supp. 3d 132, 140 (D.D.C. 2015) ("Where, as here, Plaintiff's property was seized during a pretrial search, complaint of that seizure sounds in the Fourth Amendment."). Second, the District's arguments as to the April 2020 encounter rely solely on plaintiff's own allegations. *See, e.g.*, Defs.' Mem. at 18 ("*As alleged*, the only private interests

---

[1]     Plaintiff's characterization notwithstanding, the District has not argued that MPD returning plaintiff's license "moot[s] the case." Pl.'s Opp'n at 13 n.6. Rather, the argument is that plaintiff received constitutionally adequate process, and that one of several bases for that conclusion is that as alleged, the process in place resulted in the prompt return of plaintiff's license. *See* Defs.' Mem. at 17.

affected are those of plaintiff himself, and although there is some risk officers would have stopped plaintiff, searched him, and seized his person or property in error, it is not clear what further safeguards plaintiff proposes should have been in place." (emphasis added)). Even assuming his allegations are true, plaintiff's due process claim fails the balancing test prescribed by *Mathews*; the substantial government interest in ensuring public safety and enforcing reasonable firearm restrictions outweighs any private interest plaintiff has in carrying a concealed weapon. *See* Defs.' Mem. at 18–19. Despite plaintiff's arguments, he has not stated a due process claim.

II.   <u>The Events Alleged in the Complaint Do Not Implicate the Second Amendment Because They Involve Only a Single Firearm.</u>

As the District argued, restrictions on a single individual's possession of a single firearm do not violate the Second Amendment. *See* Defs.' Mem. at 22. Plaintiff contends that under *Wrenn*, "denying a citizen the right to a concealed carry license (or firearm registration) violates the Second Amendment." Pl.'s Opp'n at 17. If that were true, however, all firearm licensing requirements would have no effect. Contrary to plaintiff's characterization, the D.C. Circuit in *Wrenn* expressly observed that the rights contained within the Second Amendment are "subject to longstanding restrictions … [that] include, for instance, licensing requirements." *Wrenn*, 864 F.3d at 667. Courts have routinely upheld such requirements in the face of Second Amendment challenges. *See, e.g.*, *Hightower v. City of Boston*, 693 F.3d 61, 74 (1st Cir. 2012) (denying Second Amendment challenge to gun license regime requiring licensees to provide truthful information about pending complaints or charges

"enforced by the revocation of licenses if the applicant provides false information");
*New York State Rifle & Pistol Ass'n, Inc. v. City of New York*, 883 F.3d 45, 64 (2d Cir.
2018) (rejecting Second Amendment challenge to municipal law restricting transport
of licensed firearms), *vacated on other grounds*, 140 S. Ct. 1525 (2020); *accord Berron
v. Illinois Concealed Carry Licensing Review Bd.*, 825 F.3d 843, 847 (7th Cir. 2016).
Plaintiff's reliance on *Wrenn*, *District of Columbia v. Heller*, 554 U.S. 570, 592, 635
(2008) (*Heller I*), and *Palmer v. District of Columbia*, 59 F. Supp. 3d 173, 176 (D.D.C.
2014), is misplaced. Plaintiff's assertions aside, none of those cases held that "denying
a citizen the right to a concealed carry license (or firearm registration) violates the
Second Amendment." Pl.'s Opp'n at 17. Plaintiff conflates two separate aspects of the
Second Amendment's protections:  (1) the broader "right of law-abiding, responsible
citizens to use arms in defense of hearth and home," *Heller I*, 554 U.S. at 592, 635,
and the more limited "right of responsible citizens to carry firearms for personal self-
defense beyond the home, subject to longstanding restrictions," *Wrenn*, 864 F.3d at
667. Plaintiff acknowledges that the District in fact drew this distinction in the
settlement reached with him over his failure to abide by CCL regulations. *See* Compl.
¶ 51 (settlement allowed plaintiff "to retain his Second Amendment rights as a D.C.
citizen (e.g., to maintain a firearm in his home)"). That the District temporarily
limited plaintiff's ability to carry a firearm in public does not violate the Second
Amendment.

        Indeed, the weight of authority is clear that reasonable restrictions on a given
individual's public carrying of one firearm does not amount to a constitutional

violation. *See Rodgers v. Knight*, 781 F.3d 932, 941 (8th Cir. 2015); *see also Walters v. Wolf*, 600 F.3d 307, 318 (8th Cir. 2011); *Pierner Lytge v. Mitchell*, 412 F. Supp. 3d 1012, 1020 (E.D. Wis. 2019). This is true when firearms are seized by police—and it is true even when a firearm has been confiscated unlawfully. *See Rodgers*, 781 F.3d at 941–42. Such an occurrence may sound in other constitutional claims, but the case law is clear that the Second Amendment has no application. *See, e.g., Dickerson v. City of Denton*, 298 F. Supp. 2d 537, 540–41 (E.D. Tex. 2004) ("Assuming … that City police officers lacked probable cause or a warrant, any seizure of weapons would violate the Fourth Amendment, not the Second Amendment."). It is telling that plaintiff offers no citations for his contention to the contrary. *See* Pl.'s Opp'n at 17.

## III.   Plaintiff Has Not Stated a Claim Under the Fourth Amendment.

### A.   Plaintiff Fails To Allege Unreasonable Searches and Seizures.

Contrary to plaintiff's mischaracterization, the District argued that the allegations in the Complaint fail to state a Fourth Amendment claim. *See* Defs.' Mem. at 25 (citing Compl. ¶¶ 58–59, 62–63).[2] As alleged, the encounters on October 10, 2018, July 5, 2019, and May 9, 2020, did not rise to the level of Fourth Amendment "seizures" because they only involved officers approaching plaintiff and asking him questions. *See* Defs.' Mem. at 25; Compl. ¶¶ 36, 58, 65.[3] Despite plaintiff's attempt to

---

[2]   The District included a "see also" cite to the October 2018 Memorandum, but did not rely on that document for its argument. *See* Pl.'s Opp'n at n.2.

[3]   The District stated in its initial memorandum that "[t]he encounters described on October 10, 2018, July 5, 2019, and April 14, 2020, merely allege that officers approached plaintiff and asked him questions." *See* Defs.' Mem. at 25. As plaintiff

infer otherwise, *see* Pl.'s Opp'n at 19, the District has not expressly or implicitly argued that the October 10, 2018 encounter was a Fourth Amendment seizure, but merely observed that plaintiff responded to officers' questions by producing his concealed firearm, *see* Defs.' Mem. at 23.

Plaintiff attempts to make much of his allegation that officers allegedly stood around him in a circle, citing to *United States v. Delaney*, 955 F.3d 1077 (D.C. Cir. 2020), for the proposition that a seizure occurs when "officers' positioning" restricts an individual's movement, or when officers "ask 'targeted' questions." *See* Pl.'s Opp'n at 19. But *Delaney* involved a blockade by vehicles; officers parked a police cruiser to block the plaintiff's vehicle from exiting a parking lot. *Delaney*, 955 F.3d at 1083. The court there observed that "[s]uch restrictions on movement are highly suggestive of a stop," *Delaney*, 955 F.3d at 1083 (citation and alterations omitted), adding that "blocking a vehicle can be the kind of application of physical force that constitutes a seizure," *id.* (quoting *United States v. Johnson*, 212 F.3d 1313, 1317 (D.C. Cir. 2000)). Plaintiff does not allege anything like the use of vehicles to barricade him during the October 10, 2018 encounter. His characterization of *Delaney* is incorrect and has no bearing on this case.

As for the December 12, 2018 stop, the District quoted the allegations from paragraph 48 of the Complaint but argued that those allegations were conclusory and failed to provide a plausible explanation of how officers responding to a drive-by

---

correctly observes, the inclusion of April 14, 2020 in that list was an error. The three dates listed should have been October 10, 2018, July 5, 2019, and May 9, 2020.

shooting might have known that plaintiff "could not have possibly been the shooter *or otherwise involved in the incident.*" *See* Defs.' Mem. at 26–27 (emphasis added) (citing *Iqbal*, 556 U.S. at 678). Plaintiff disregards this and ascribes to the District an argument about drive-by shootings that appears nowhere in the District's briefing. *See* Pl.'s Opp'n at 20.

Further, the District argued that "even assuming the truth of the facts alleged" in paragraphs 62 and 63 of the Complaint, during the April 14, 2020 encounter, "officers saw that [plaintiff's] pistol was not properly secured—even though in a holster—which is a violation of local law." *Id.* (citing 24 DCMR § 2344.2). District regulations require that CCL holders carry a gun "in a holster *on their person in a firmly secure manner* that is reasonably designed to prevent loss, theft, or accidental discharge of the pistol." 24 DCMR § 2344.2 (emphasis added). Plaintiff's own allegations state that on April 14, 2020, he had his firearm in "a fully-zipped side pocket in his jacket," Compl. ¶ 63, not firmly secured "on [his] person," *see* 24 DCMR § 2344.2. The circumstances he describes therefore suffice to establish probable cause for his arrest, not a Fourth Amendment violation. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (officer's observation of minor offenses establishes probable cause for arrest). The allegations in the Complaint make clear that plaintiff has failed to state a viable claim under the Fourth Amendment.

**B.**   **Plaintiff Fails To State a Claim of Excessive Force, Assault or Battery.**

Plaintiff has not stated a claim for his overlapping assault, battery and Fourth Amendment excessive force claims for a simple reason:  All three arise out of what

11

plaintiff describes as routine searches, seizures and arrests. *See* Defs.' Mem. at 28 (citing Compl. ¶¶ 125–40). The Complaint nowhere alleges the use of unreasonable force, and plaintiff now offers no contention to the contrary. *See* Pl.'s Opp'n at 24-25. When using only reasonable force—which by definition does not violate the Fourth Amendment's prohibition on unreasonable seizures—District law is clear that police officers are entitled to a qualified privilege from liability. *See* Defs.' Mem. at 28 (citing *Halcomb v. Woods*, 767 F. Supp. 2d 123, 136 (D.D.C. 2011)).

Instead of addressing that argument, plaintiff maintains only that Fourth Amendment claims generally do not require an injury. Pl.'s Opp'n at 24–25. But the District argued that excessive force claims in particular require showing an injury, not that all Fourth Amendment claims of every kind do. *See* Defs.' Mem. at 29; *see Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007); *Fisher v. City of Las Cruces*, 584 F.3d 888, 898 (10th Cir. 2009). The absence of any alleged injury also bears on plaintiff's assault and battery claims. For plaintiff to maintain that the actions of the officers in question were not privileged, he would have to (but does not) allege that more than a reasonable amount of force was used, *see Halcomb*, 767 F. Supp. 2d at 136—an unlikely proposition absent any alleged harm. Plaintiff has not stated a claim for excessive force, assault or battery.

## IV.   Plaintiff's Equal Protection Claim Fails Because the Complaint Lacks Sufficient Allegations About Others Treated Differently.

Plaintiff tries to argue he has pled an equal protection claim by asserting facts from other cases—some of them more than a decade old—purportedly showing that the District's enforcement of its firearm restrictions targets African American

residents. Pl.'s Opp'n at 25–26; *see also id.* at 27. But none of those cases addresses the specific events plaintiff alleges here, and plaintiff has brought this lawsuit solely on his own behalf. Plaintiff also proffers without citation several assertions found nowhere in his pleadings. *See, e.g., id.* at 27 (asserting "Defendants are particularly nervous about <u>African American</u> gun owners in the District" (emphasis in the original)); *id.* (police stops "are unthinkable in predominantly white neighborhoods such [as] Georgetown"). Plaintiff cannot plead an equal protection claim based on conclusory allegations, let alone allegations that do not actually appear in his Complaint. *See Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014) ("It is well settled law that a plaintiff cannot amend his or her complaint by the briefs in opposition to a motion to dismiss.").

Rather, plaintiff's Complaint "must assert facts that support the allegation that the government intentionally treated [him] differently from others who were similarly situated." *BEG Invs., LLC v. Alberti*, 85 F. Supp. 3d 13, 34 (D.D.C. 2015) (citation omitted); *see also City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003) (noting that a "discriminatory intent or purpose is required to show a violation of the Equal Protection Clause"); *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) (equal protection "can be violated only by purposeful discrimination"). Plaintiff has not done so and thus has not stated an equal protection claim. *See* Defs.' Mem. at 30–33.

13

V.    **Plaintiff Has Not Stated a Claim Against Any of the Individual Defendants.**

    A.    **The Individual Defendants Are Entitled to Qualified Immunity Because None Violated Clearly Established Law.**

Plaintiff acknowledges that for an officer to be held liable for alleged constitutional violations, "existing precedent must place the illegality of the particular act beyond debate." Pl.'s Opp'n at 28 (alterations adopted) (internal quotation marks omitted) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018)). But plaintiff identifies no such precedent for any of the claims he has put forward.

First, plaintiff points to *Wrenn*, *Heller I* and *Palmer*, and asserts it is an "immediate implication of these decisions" that the alleged conduct here was a violation of the Second Amendment and due process. Pl.'s Opp'n at 29, 30. By definition, however, a legal rule cannot be clearly established if it is only surmised by "implication." Regardless, none of those cases clearly establishes anything related to the alleged conduct here. *Palmer*, for instance, was a district court case, not controlling precedent. *See Wesby*, 138 S. Ct. at 589–90 (legal principle cannot be clearly established unless "dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority'" (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011))). Without citation, plaintiff maintains that *Palmer* established "the right to carry a handgun in the District." Pl.'s Opp'n at 29. But even if that were true (which it is not), such a broad, general legal principal would have no bearing on qualified immunity under the specific factual circumstances here. *See* Defs.' Mem. at 34 (quoting *White v. Pauly*, 137 S. Ct. 548, 552, (2017)) (when assessing qualified

immunity, the applicable legal principle "should not be defined at a high level of generality" but rather "must be particularized to the facts of the case"). Plaintiff then cites *Wrenn* for the proposition that "the right to a concealed carry license … cannot be arbitrarily granted or withheld on the whim of an MPD official," but then points to a quote from *Wrenn* that says nothing about concealed carry licenses, let alone in a way that would clearly establish an unqualified constitutional right to obtain or possess one. Pl.'s Opp'n at 29. Tellingly, plaintiff says nothing at all about *Heller I*. It is not clearly established that any of the conduct plaintiff alleges amounts to a Second Amendment violation.

Plaintiff's arguments similarly gain no traction as to the Fourth Amendment. He contends that "ordinary Fourth Amendment principles" govern the encounters he alleges in the Complaint, offering the conclusory assertion that "each incident was clearly illegal." Pl.'s Opp'n at 30. But by pointing to "ordinary Fourth Amendment principles," plaintiff once again attempts to define the applicable rights only "at a high level of generality," not in a manner "particularized to the facts of the case" as the law demands. *See White*, 137 S. Ct. at 552.

Thinner yet are plaintiff's arguments pertaining to equal protection. Plaintiff states the obvious truism that "being African American does not create reasonable suspicion." Pl.'s Opp'n at 30. The District has never argued otherwise. But reasonable suspicion is relevant to claims under the Fourth Amendment, not to equal protection claims. As the District argued, "it is not clearly established that stopping or searching a concealed-carry licensee to ensure compliance with the law, or even temporarily

confiscating the licensee's firearm and license documents, runs afoul of the Second Amendment, the Fourth Amendment, or the Equal Protection Clause." Defs.' Mem. at 35 (citing cases highlighting unsettled nature of law in these areas). Plaintiff offers nothing to contradict that conclusion.

Plaintiff finally argues that even if his claims for damages against the individual defendants are barred by qualified immunity, claims for injunctive relief are not, and "each Counts' [*sic*] request for injunctive and declaratory relief survives." Pl.'s Opp'n at 31. But plaintiff's request for injunctive relief consists of nothing more than the words "injunctive relief" added to the prayer for relief following each count in the Complaint. *See* Compl. at 15, 17, 19, 21, 22, 23, 24, 25. Courts regularly refuse to permit claims that would otherwise be barred based solely on non-specific requests for injunctive relief. *See, e.g.*, *Lors v. Dean*, 726 F.3d 1036, 1041 (8th Cir. 2013) (granting summary judgment in light of state's sovereign immunity from monetary damages when complaint "[did] not contain a pleading for injunctive relief but only a general prayer for unspecified injunctive relief"), *vacated on other grounds by Lors v. Dean*, 746 F.3d 857, 859-60 (8th Cir. 2014); *Buckner v. Shumlin*, Civil Action No. 12-90, 2013 WL 809590, at *5 n.2 (D. Vt. Mar. 5, 2013) (refusing to apply *Ex parte Young* exception to Eleventh Amendment immunity when Complaint made only "non-specific" request for injunctive relief). Plaintiff cannot avoid qualified immunity here by leaning on formless requests for unspecified injunctive relief.

**B.** **All Claims Against Defendants Newsham and Fitzgerald Should Be Dismissed.**

Plaintiff contends that he has stated a claim against Commander Fitzgerald based on allegations that Commander Fitzgerald is "responsible for" setting MPD policies in plaintiff's neighborhood, and based on having "received two detailed letters containing the facts of this dispute." Pl.'s Opp'n at 31 n.10. According to plaintiff, this "amply satisfied the requirement of alleging personal involvement in the illegal conduct." *Id.* But plaintiff still does not identify any unlawful acts Commander Fitzgerald himself allegedly committed. Sparser yet are his contentions as to Chief Newsham, which rely on the telling assertion that Chief Newsham "is surely aware of" the relevant municipal policies. *Id.* Even if plaintiff means to allege that Commander Fitzgerald and Chief Newsham should be liable for having supervised the relevant officers, supervisory liability is "limited." *Elkins v. District of Columbia*, 690 F.3d 554, 565 (D.C. Cir. 2012). Plaintiff cannot simply allege "mere negligence" by an individual supervisor, but must establish an "affirmative link" between the supervisor's conduct and the constitutional injury that is "strong enough that, from [the supervisor's] perspective, the possibility of a constitutional violation occurring [by a subordinate] would have been highly likely, not simply foreseeable." *Id.* at 566. Plaintiff has not done so. Defendants Fitzgerald and Newsham should be dismissed.

**VI.** **Plaintiff Has Not Stated a Claim Against the District Under a Theory of Municipal Liability.**

Plaintiff relies on two theories of municipal liability: the adoption of a custom, and deliberate indifference. *See* Pl.'s Opp'n at 32. But rather than identify the

allegations forming the basis for each theory, plaintiff confuses the requirements of each and instead makes clear he has not plausibly alleged municipal liability.

Plaintiff first argues that the District has a custom of "physically depriving citizens of their concealed carry licenses and related firearm-related property" amid ongoing revocation proceedings and investigations. *Id.* But plaintiff still points to no allegations involving anyone other than himself having a license or firearm confiscated under similar circumstances. To establish municipal liability under the theory of a custom, a plaintiff must show "[e]gregious instances of misconduct … following a common design." *Carter v. District of Columbia*, 795 F.2d 116, 123 (D.C. Cir. 1996). The alleged custom "must be pervasive." *Mehari v. District of Columbia*, 268 F. Supp. 3d 73, 84 (D.D.C. 2017) (internal quotation marks omitted) (quoting *Sanders v. District of Columbia*, 522 F. Supp. 2d 83, 88 (D.D.C. 2007)). Indeed, courts routinely decline to find municipal liability based on allegations pertaining only to a single individual. *See, e.g., id.* (rejecting plaintiff's municipal liability claim alleging unlawful arrests and prosecutions of immigrants when plaintiff "ha[d] not pointed to any other examples of the [police] arresting an immigrant during the relevant time period and 'compelling' that immigrant to plead guilty to a public order offense"); *Sanders*, 522 F. Supp. 2d at 88 (declining to find custom of First Amendment retaliation against government employees when plaintiff had not "pointed to any other employee who suffered similar retaliation").

Faced with this reality, plaintiff merely points to cases involving dissimilar allegations that officials were not adequately trained. *See* Pl.'s Opp'n at 33–34 (citing

*Parker v. District of Columbia*, 850 F.2d 708, 713 (D.C. Cir. 1988), and *Tuttle*, 471 U.S. at 823–24). The failure to train is one way of alleging municipal liability based on deliberate indifference. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). But that is a separate theory from alleging a custom, *see Baker v. District of Columbia*, 326 F.3d 1302, 1306–07 (D.C. Cir. 2003), and, as discussed above, involves separate requirements, *see Carter*, 795 F.2d at 123; *Mehari*, 268 F. Supp. 3d at 84. Rather than identify allegations relevant to this point, plaintiff incorrectly attributes a quote to the District that appears nowhere in the District's brief. *See* Pl.'s Opp'n at 32–33. The District has not argued that plaintiff's police encounters in December 2018, July 2019 and April 2020 were initiated "based simply on their impressions gained in October 2018." *Id.* at 33. Regardless, plaintiff's contention that "[t]his defense—itself the municipal position—is strong evidence of municipal liability for the illegal custom," *id.*, makes no sense. Legal arguments made in a brief are not evidence at all, let alone evidence of municipal liability. *See COMPTEL v. FCC*, 945 F. Supp. 2d 48, 60 (D.D.C. 2013) ("Statements made by counsel in briefs are not admissible evidence upon which summary judgment may be granted.").

Plaintiff's arguments as to deliberate indifference fare no better. Plaintiff insists that he has alleged a sufficiently pervasive pattern of conduct by identifying "seven constitutional violations." Pl.'s Opp'n at 35. But this misleadingly aggregates unrelated claims that, again, pertain only to plaintiff himself. Plaintiff has raised separate claims under the Fourth Amendment, Second Amendment and Fifth Amendment Due Process Clause. The District disputes that he has plausibly alleged

unconstitutional conduct for any of the incidents described in the Complaint. But even if it were a Second Amendment violation, by plaintiff's own account he only alleges two instances in which police confiscated his CCL. *See* Pl.'s Opp'n at 35. And even if it were a Fourth Amendment violation, he alleges only a single instance of his car being searched. *See id.* Plaintiff cannot combine allegations concerning his own searches, seizures and firearm restrictions to assert that the District was deliberately indifferent to the risk of "constitutional violations" generally. *See Garnes-El v. District of Columbia*, 841 F. Supp. 2d 116, 121 (D.D.C. 2012) (deliberate indifference requires "a pattern of similar constitutional violations" and such allegations must go "beyond [plaintiff's] testimony about his own experiences"). Plaintiff has not stated a claim for municipal liability.

## VII.   Plaintiff's Common Law False Arrest and False Imprisonment Claims Cannot Be Sustained.

Finally, plaintiff offers just two perfunctory sentences in support of his common law false arrest and false imprisonment claims. *See* Pl.'s Opp'n at 35. As the District argued, plaintiff alleges only one arrest, and his remaining allegations describe only police encounters that do not rise to the level of Fourth Amendment detentions. *See* Defs.' Mem. at 39–41. Without more, plaintiff has not stated a claim for false arrest or false imprisonment, and those claims should also be dismissed.

## CONCLUSION

For the foregoing reasons, and the reasons stated in the District's motion to dismiss, the Court should grant the District's motion and dismiss the Complaint with prejudice.

Dated:  December 3, 2020.          Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Chief, Equity Section

*/s/ Micah Bluming*
MICAH BLUMING [1618961]
Assistant Attorney General
ANDREW J. SAINDON [456987]
Senior Assistant Attorney General
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
(202) 724-7272
(202) 730-1833 (fax)
micah.bluming@dc.gov
andy.saindon@dc.gov

*Counsel for Defendants*