## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAQUAN LEWIS,<br><br>                    Plaintiff,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>                    Defendants. | Civil Action No. 20-2241 (ABJ) |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S APPLICATION FOR A PRELIMINARY INJUNCTION

## INTRODUCTION

Plaintiff seeks a preliminary injunction (PI) against the District of Columbia, Metropolitan Police Department (MPD), Chief Peter Newsham, Commander William Fitzgerald, Sergeant Megan Mulrooney, and Officers Joshua Anderson and Joseph Blasting (collectively, the District), requiring them not to stop him or search him unlawfully. The Parties have fully briefed a motion to dismiss plaintiff's Complaint, which raises allegations about unlawful searches and seizures on five specified occasions since 2018. Plaintiff now seeks a PI based on events from December 5, 2020, that are not included in his Complaint and involved none of the officers named as defendants in this case.

Plaintiff is unlikely to succeed on the merits of his claims under the Second and Fourth Amendments, has not shown a likelihood of irreparable harm absent a court order, and has not shown that the balance of the equities and the public interest

weigh in his favor. As discussed in the District's motion to dismiss, plaintiff cannot succeed on the merits of his Second Amendment claim because his allegations involve restrictions on only one firearm, and he cannot succeed on his Fourth Amendment claims because the encounters he alleges either were not seizures or were justified by probable cause or reasonable suspicion, and the searches he alleges were justified by probable cause or his own consent. The most recent events plaintiff alleges do not change the analysis for either claim, nor do they change his inability to overcome qualified immunity and to establish municipal liability against the District. In any case, plaintiff's argument in support of a PI relies on allegations about previous events discussed in his Complaint—which, by virtue of having occurred between two years and seven months ago, fail to demonstrate imminent, irreparable harm. Plaintiff also presents no competent evidence that the balance of the equities and public interest weigh in his favor. Plaintiff's motion should be denied.

## BACKGROUND

### I.  Factual Background

Plaintiff is an African American resident of the District who was issued a concealed-carry license (CCL) in July 2018, pursuant to the District's License to Carry a Pistol Amendment Act of 2014 (the Act), 62 D.C. Reg. 1944–57 (Feb. 6, 2015) (codified at D.C. Code § 7-2502.01 *et seq.*).[1] Compl. [1] ¶¶ 1, 10, 34. The Complaint

---

[1]    The District elaborated on the content and legislative history of the Act in its motion to dismiss and incorporates that background here. *See* Mem. ISO Defs.' Mot. to Dismiss Pl.'s Compl. (Defs.' MTD Mem.) [8] at 3–6.

alleges that between October 2018 and May 2020, plaintiff was subjected to unconstitutional stops by MPD on several different occasions. *See* Defs.' MTD Mem. at 6–10. In his application for a PI, plaintiff now adds allegations about an incident that allegedly took place on December 5, 2020. *See* Pl.'s Mem. ISO App. for a PI (Pl.'s Mem.) [14-1] at 2–3.[2] According to plaintiff, on December 5, 2020, he was walking along the street near the corner of 21st Street and Maryland Avenue NE when a police car pulled up to him and an officer jumped out and began following him. Pl.'s Mem. at 2. That officer, who is not a named defendant in this case, *see* Public Incident Report CCN #20173113, Metropolitan Police Department (Dec. 5, 2020), Ex. A, asked plaintiff if he had a gun, Pl.'s Mem. at 2. Plaintiff did not answer and kept walking away. *Id.* at 3. The officer then stopped plaintiff and searched him. *Id.* No firearm was recovered, and plaintiff was released. *Id.*[3]

## II.   Procedural History

Plaintiff filed this lawsuit on August 14, 2020. *See* Compl. Plaintiff alleges a variety of constitutional violations and common law claims based on his encounters with MPD, contending that he was repeatedly questioned and detained, and that officers unlawfully confiscated his personal firearm, concealed carry license and

---

[2]   Plaintiff's Complaint does not include allegations about this incident, and he has not moved to amend his pleadings.

[3]   Among other exhibits, plaintiff has submitted with his PI application affidavits from a friend [14-4] and from plaintiff's grandfather [14-5]. Both affidavits merely contain attestations about plaintiff's character and do not contain any admissible evidence about any of the encounters on which plaintiff's claims are based. The Court should disregard these exhibits. *See* Fed. R. Evid. 401, 402, 404(a)(1).

firearm registration. He contends he was targeted for all of these actions because of his race and status as a concealed-carry license holder. Plaintiff requests declaratory relief, injunctive relief, compensatory damages, punitive damages and attorney's fees. *See id.* at 25.

On October 26, 2020, the District moved to dismiss the Complaint. *See* Defs.' MTD Mem. Plaintiff filed his opposition on November 16, 2020 [10], and the District replied on December 3, 2020 [13]. Before the Court rendered a decision on the pending motion, plaintiff filed an application for a PI on December 12, 2020 [14], based on events that occurred on December 5, 2020. On December 15, 2020, the Court conducted a telephone conference to discuss the schedule for the District's response and ordered narrow discovery to be provided to plaintiff by January 15, 2021.

## LEGAL STANDARD

A preliminary injunction "is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). "The primary purpose of a preliminary injunction is to preserve the object of the controversy in its then existing condition—to preserve the status quo." *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014) (internal quotation marks omitted); *see Chaplaincy of Full Gospel Churches v. England* (*CFGC*), 454 F.3d 290, 297 (D.C. Cir. 2006).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

4

preliminary relief, that the balance of equities tips in his favor, *and* that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (emphasis added). It is the moving party's burden to make a showing of "all four factors," and to show that the factors, "taken together, weigh in favor of the injunction." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (internal quotation marks omitted) (quoting *Davis*, 571 F.3d at 1292); *In re Navy Chaplaincy*, 738 F.3d 425, 428 (D.C. Cir 2013).

## ARGUMENT

I.   <u>Plaintiff Cannot Show a Likelihood of Success on the Merits.</u>

Despite raising several constitutional claims in his Complaint, *see* Compl. ¶ 5, in seeking a PI, plaintiff only argues that he is likely to succeed on two:  his claims under the Second Amendment and the Fourth Amendment, respectively. *See* Pl.'s Mem. at 10, 14. Plaintiff, however, has not shown a likelihood of success on the merits as to either one.

A.   <u>Plaintiff Cannot Succeed on His Second Amendment Claim Because He Only Alleges He Was Deprived of the Right to Carry a Single Firearm.</u>

Plaintiff cannot show a likelihood of success on the merits of his claim under the Second Amendment. The District argued in its motion to dismiss that plaintiff's allegations, even if true, do not state a claim under the Second Amendment because they only pertain to restrictions on a single firearm. *See* Defs.' MTD Mem. at 20–22. The District incorporates those arguments by reference here.

Regardless of whether plaintiff amends his Complaint to add allegations about the latest incident, the analysis of his Second Amendment claim would not change. Indeed, the only new contention plaintiff now makes is that on December 5, 2020,

MPD "stopped [him] simply because he declined to talk to police about whether he was carrying." Pl.'s Mem. at 15. That allegation does not implicate the Second Amendment and adds nothing to the claims plaintiff has raised in his Complaint. For the reasons the District stated in its motion to dismiss, plaintiff cannot succeed on the merits of his Second Amendment claim. Defs.' MTD Mem. at 20–22.

**B. Plaintiff Cannot Succeed on His Fourth Amendment Claim Because He Has Not Shown He Was Subject to Unlawful Searches or Seizures by Any Defendants.**

As the District previously argued, the allegations in plaintiff's Complaint also fail to state a Fourth Amendment claim because the encounters he alleges either were not seizures or were justified by probable cause or reasonable suspicion, and the searches he alleges were justified by probable cause or his own consent. *See* Defs.' MTD Mem. at 9–12. The District incorporates those arguments here. Plaintiff now asserts that during the December 5, 2020 encounter, "Defendants again stopped and searched [him] without reasonable suspicion." Pl.'s Mem. at 13. That is not true. The arresting officer, who knew plaintiff previously had his CCL revoked, observed plaintiff concealing his groin area while walking away from him and refusing to answer his questions. Public Incident Report CCN #20173113. Regardless, plaintiff's efforts to portray that encounter as part of a pattern of conduct falls flat. For starters, as noted above, no officer named as a defendant here was involved in the December 5, 2020 encounter. Moreover, as previously argued, several of the encounters plaintiff alleges do not involve Fourth Amendment searches or seizures, and others were justified either by probable cause, reasonable suspicion or plaintiff's own consent. *See*

Defs.' MTD Mem. at 9-11. Plaintiff now concedes that settled law in this circuit holds that officers may ask individuals whether they are carrying firearms without effectuating a Fourth Amendment stop.[4] *See* Pl.'s Mem. at 17 (citing *United States v. Gross*, 784 F.3d 784 (D.C. Cir. 2015), and *United States v. Goddard*, 491 F.3d 469 (D.C. Cir. 2007)).[5] Plaintiff has not met his burden of showing he is likely to succeed on the merits of his Fourth Amendment claims.

### C. Plaintiff Cannot Overcome Qualified Immunity and Offers No Arguments About Unconstitutional Conduct by the Individual Defendants.

Regardless of whether plaintiff could establish a likelihood that constitutional violations occurred, he has failed to overcome qualified immunity. As the District argued in its motion to dismiss, no clearly established law forbids officers from speaking with or even stopping an individual to see whether they are carrying a concealed firearm in compliance with applicable licensing regulations. *See* Defs.' MTD Mem. at 34–35. And it is not clearly established that the Second Amendment prohibits police from asking individuals whether they are carrying firearms. *See id.* Plaintiff does not offer any argument to the contrary, let alone point to relevant authorities clearly establishing either right.

---

[4]      Plaintiff does not contend that officers used excessive force during the December 5, 2020 encounter. Regardless, he cannot succeed on an excessive force claim for the reasons stated in the District's motion to dismiss. *See* Defs.' MTD Mem. at 12–13.

[5]      As discussed below, even if plaintiff's status as a CCL holder somehow rendered any individual official's conduct unconstitutional, *see* Pl.'s Mem. at 17, it is far from clearly established that such conduct is unlawful, leaving him unlikely to succeed on his claims.

More significantly, however, no officer involved in the December 5, 2020 encounter is a defendant in this case. That encounter thus has no bearing on any defendant's liability, as plaintiff has alleged no new claims against any of them. Moreover, as the District has previously argued, plaintiff has alleged no unconstitutional conduct on the part of defendants Newsham and Fitzgerald. *See* Defs.' MTD Mem. at 17; *Elkins v. District of Columbia*, 690 F.3d 554, 565 (D.C. Cir. 2012). Plaintiff now fails to argue that defendant Newsham or Fitzgerald—or any other individual defendant—engaged in any unlawful conduct in the latest encounter. Plaintiff has not met his burden of showing he is likely to succeed on any claim against any individual defendant.

### D. Plaintiff Cannot Establish Municipal Liability Because He Cannot Show a Policy, Practice or Custom of Unconstitutional Conduct.

Plaintiff also cannot show he is likely to succeed on his constitutional claims against the District. As the District argued, plaintiff cannot make out a claim for municipal liability as required under *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, 691 (1978). *See* Defs.' MTD Mem. at 18–20. Plaintiff failed to present in his motion any argument supporting either of the two municipal liability theories he has raised: the adoption of a custom and deliberate indifference. *See* Pl.'s Opp'n to Defs.' Motion to Dismiss [10] at 31–33. He has shown neither "[e]gregious instances of misconduct … following a common design," *Carter v. District of Columbia*, 795 F.2d 116, 123 (D.C. Cir. 1996), nor a custom that is "pervasive," *Mehari v. District of Columbia*, 268 F. Supp. 3d 73, 84 (D.D.C. 2017) (internal quotation marks omitted). He alleges only that MPD has stopped or searched him on five occasions, which is not enough to

establish a municipal custom of unconstitutional conduct. *See* Defs.' MTD Mem. at 18 (citing cases). That showing is also not enough to establish municipal liability under a deliberate indifference theory. *See Garnes-El v. District of Columbia*, 841 F. Supp. 2d 116, 121 (D.D.C. 2012) (municipal deliberate indifference requires a showing "beyond [plaintiff's] testimony about his own experiences"). Indeed, plaintiff has offered no new arguments that the District was deliberately indifferent to his constitutional rights. Plaintiff cannot meet his burden to show a likelihood of success on the merits against the District without offering any arguments or evidence concerning municipal liability.

## II.   Plaintiff Cannot Show He Will Suffer Likely and Imminent Irreparable Harm Absent Court-Ordered Relief.

Plaintiff also cannot show a likelihood of irreparable harm absent the relief he seeks. "The failure to demonstrate irreparable harm is 'grounds for refusing to issue a preliminary injunction, even if the other three factors … merit such relief.'" *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 50 (D.D.C. 2011) (quoting *CFGC*, 454 F.3d at 297). "[P]roving irreparable injury is a considerable burden, requiring proof that the movant's injury is certain, great and actual—not theoretical—and imminent, creating a clear and present need for extraordinary equitable relief to prevent harm." *Power Mobility Coal. v. Leavitt*, 404 F. Supp. 2d 190, 204 (D.D.C. 2005) (citations and internal quotation marks omitted). It is the moving party's burden to "substantiate the claim that irreparable injury is likely to occur." *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (internal quotation marks omitted). For an injunction of any kind to be warranted, a plaintiff must show "that he personally faces an imminent

threat of harm" absent court-ordered relief. *Halkin v. Helms*, 690 F.2d 977, 1005–06 (D.C. Cir. 1982) (quoting *Reporters' Comm. for Freedom of the Press v. Am. Tel. & Telegraph*, 593 F.2d 1030, 1067 (D.C. Cir. 1978)).

Plaintiff's instant showing is based primarily on events from the past two years and is insufficient to meet his burden. Alleged past injury cannot justify injunctive relief, let alone emergency injunctive relief. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 210–11 (1995) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 105–106 (1983)). Plaintiff asserts that he faces "actual and ongoing" harm for two reasons, neither of which is availing. First, he contends he "cannot safely exercise his Second Amendment rights" because "[h]e is now forced to leave his concealed carry pistol at home." Pl.'s Mem. at 15. This is not true; plaintiff has at least one CCL for at least one firearm, *see* Lewis Aff. [14-3] ¶¶ 17, 41, and may carry that firearm provided he complies with the legal requirements of his license. But even if he were in fact barred from carrying a concealed firearm, this would in no way infringe on his Second Amendment rights because he would not be barred from possessing firearms in other contexts. *See* Section I.A above (citing Defs.' MTD Mem. at 20–22); *see also Archdiocese of Wash. v. WMATA*, 897 F.3d 314, 334 (D.C. Cir. 2018) ("[T]he deprivation of constitutional rights constitutes irreparable injury only to the extent such deprivation is shown to be likely.").

Second, citing to District-wide data on police stops, plaintiff asserts that "the systemic nature of Defendants' Fourth Amendment practices" supports a showing of likely and imminent irreparable harm. *See* Pl.'s Mem. at 16. But that vague assertion

does not establish irreparable harm as to plaintiff himself and cannot warrant injunctive relief. *See Halkin*, 690 F.2d at 1005–06 (plaintiff must make showing "that *he personally* faces an imminent threat of harm" (emphasis added)). Plaintiff's contentions about "MPD's practices related to gun recovery" get him no further. Acknowledging that police questioning about weapon possession does not itself implicate the Fourth Amendment, plaintiff merely points again to his own allegations about being coerced to answer questions and undergo searches. *See* Pl.'s Mem. at 17. But allegations of sporadic past injuries alone leave the prospect of future injuries "far too speculative" and do not establish a "tangible injury" that is "certain and great" as is required for injunctive relief. *See CFGC*, 454 F.3d at 298; *see also Wisc. Gas Co.*, 758 F.2d at 674 ("Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur." (emphasis in the original)).

Plaintiff has presented no competent evidence to show that he faces irreparable harm that is both "likely" and "imminent," rather than merely "conjectural." *Brodie v. U.S. Dep't Health and Human Servs.*, 715 F. Supp. 2d 74, 85 (D.D.C. 2010); *see also Ctr. for Auto Safety v. Dole*, 582 F. Supp. 1444, 1450 (D.D.C. 1984) (plaintiff "should have brought forward concrete facts to support its claim of irreparable injury if such existed, yet it has not done so"). Absent this showing, he cannot show entitlement to emergency injunctive relief.

## III.    The Balance of the Equities and Public Interest Counsel Against a Preliminary Injunction.

Even if plaintiff could show a likelihood of success on the merits and that irreparable harm would result without injunctive relief, he must show both that "the

balance of equities tips in [his] favor," and that "an injunction is in the public interest." *Winter*, 555 U.S. at 20. These two factors "merge when the Government is the opposing party" and are thus analyzed together. *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019) (citation and internal quotation marks omitted). "Equitable relief is not granted as a matter of course, and a court should be particularly cautious when contemplating relief that implicates public interests." *Salazar v. Buono*, 559 U.S. 700, 714 (2010).

Plaintiff asks this Court to order that MPD comply with the law when stopping and searching him in the future, and to order that defendants Fitzgerald and Newsham "inform all MPD staff in the Fifth District of the Court's ruling along with the specific examples regarding Mr. Lewis, and instruct them to abide by it, within 7 days of the Court's Order." Pl.'s Proposed Order [14-2] at 1–2. But that is not relief available to him. The Federal Rules of Civil Procedure require that any injunction issued must "state its terms specifically," and must "describe in reasonable detail … the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B), (C). As the Supreme Court has repeatedly emphasized, "the specificity provisions of Rule 65(d) are no mere technical requirements," but rather serve to "prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974).

Orders such as that proposed by plaintiff requiring general compliance with the law cannot satisfy this standard. *See, e.g., SEC v. Washington Investment*

*Network*, 475 F.3d 392, 407 (D.C. Cir. 2007) (vacating injunction that "enjoined [defendants] from future violations of" specified sections of federal statute because injunction "might subject defendants for contempt for activities having no resemblance to the activities that led to the injunction"); *Vallario v. Vandehey*, 554 F.3d 1259, 1268 (10th Cir. 2009) ("Injunctions simply requiring a defendant 'to obey the law' are generally 'too vague' to satisfy Rule 65(d)."); *cf. United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1137 (D.C. Cir. 2009) (affirming injunction prohibiting tobacco manufacturer from making specified false statements and engaging in racketeering, emphasizing that district court's order was "not a generalized injunction to obey the law, especially when read in the context of the district court's legal conclusions and 4,088 findings of fact about fraud in the manufacture, promotion, and sale of cigarettes").

The specific prohibitions plaintiff proposes, *see* Pl.'s Proposed Order at 2, do not change this, because they serve only as examples of the conduct plaintiff seeks to enjoin. The injunction he proposes is that MPD "immediately refrain from conducting investigative stops of [him] without reasonable suspicion, in accordance with the law as set forth and clarified in the Court's Opinion." *Id.* at 1. An injunction at that level of abstraction does not pass muster under Rule 65(d).

Moreover, the second form of injunctive relief proposed by plaintiff, namely that defendants refrain from searching his property "solely based on suspicion that Mr. Lewis is in lawful possession of firearms or firearm paraphernalia," Pl.'s Proposed Order at 2, would serve no purpose. As clarified in the District's motion to dismiss,

officers did not search plaintiff because they believed he was "lawfully" in possession

of a firearm; rather, officers searched him because they had grounds to believe he was

not carrying his concealed firearm securely, and was thus in violation of District law.

*See* Defs.' MTD Mem. at 25–27; 24 DCMR § 2344.2. Defendants should not be ordered

to refrain from doing something they have never done in the first place.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiff's application for a

preliminary injunction.

Dated:  December 30, 2020.        Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Chief, Equity Section

*/s/ Micah Bluming*
MICAH BLUMING [1618961]
Assistant Attorney General
ANDREW J. SAINDON [456987]
Senior Assistant Attorney General
400 Sixth Street, N.W., Suite 10100
Washington, D.C. 20001
(202) 724-7272
(202) 730-1833 (fax)
micah.bluming@dc.gov
andy.saindon@dc.gov

*Counsel for Defendants*

14